MARY A. ROBBINS *vs.* HORACE ROBBINS.
HORACE ROBBINS *vs.* MARY A. ROBBINS.

The usage of not granting a divorce upon the uncorroborated testimony of the libellant is merely a general rule of practice, not an inflexible rule of law.

Any condonation by a wife of her husband's cruelty is on condition, implied if not expressed, that he will in future treat her with conjugal kindness; and a breach of this condition will revive the right to maintain a libel for the original offence, and may consist in conduct which would not of itself sustain such a libel.

A libel for divorce on the ground of desertion caused by the extreme cruelty of a husband may be sustained by the wife on proof that, after she had condoned acts of cruelty sufficient to support such a libel, he, beginning only a fortnight after the last act proved, wholly and continuously refused to speak to her for six weeks, although living with her in the same house.

Two LIBELS for divorce from the bonds of matrimony, tried together before *Foster*, J., and by him reserved for the determination of the full court on the following report:

" The libel of the wife alleged her desertion for five years, caused by the extreme cruelty of her husband; that of the husband her desertion for five years without cause. At the trial, the wife testified to three or four acts of personal violence, amounting to extreme cruelty, committed about a year before the separation; and to one about eight weeks before she left him. She was corroborated only as to one act, committed about a year before the separation. After the last act of cruelty, she continued to cohabit with her husband; but she testified that for six weeks before she left him he wholly and continuously refused to speak to her; and I was satisfied that her statement was true.

" I was of the opinion, and found, and ruled, that, although the conduct of the wife showed condonation on her part of the specific acts of personal violence, yet that the husband's persistent refusal to speak to her for six weeks was a violation on his part of the implied condition of future kind treatment, upon which the condonation was based, and was such misconduct as justified the wife in leaving his house; that the husband's libel must be dismissed; and that the wife was entitled to a decree

To this ruling the husband excepted; and so far as it is a question of law I reserve it for the consideration of the full court."

*J. B. Harris*, for the husband.   1. The reason of the rule not to grant a divorce on the uncorroborated testimony of the libellant requires that where a ground for divorce has been condoned the libellant should be corroborated as to subsequent misconduct of the libellee relied on to revive it.

2. Such misconduct should at least be of a nature sufficient to support a decree for a divorce from bed and board.  *Palmer v. Palmer*, 2 Swab. & Trist. 62.   And in a case like this, where it is in the nature of cruelty, it should be such as would come within the definition of cruelty given in *Bailey v. Bailey*, 97 Mass. 373.   The mere omission of a husband to speak to his wife for six weeks is not cruelty within that definition.

*P. Simmons*, for the wife.

Gray, J.   The report of the justice before whom the hearing was had reserves for the consideration of the full court nothing but the question of law involved.   The only matter for our decision therefore is, whether the evidence reported in law warrants the finding; and we have no doubt that it does.

The rule, upon which the judges have usually acted in these cases, of not granting a divorce upon the uncorroborated testimony of the libellant, is merely a general rule of practice, and not an inflexible rule of law.   When other evidence can be had, it is not ordinarily safe or fit to rely upon the testimony of the party only.   But sometimes no other evidence exists, or can be obtained.   The parties are made competent witnesses by statute, and there is no law to prevent the finding of a fact upon the testimony of a party whose credibility and good faith are satisfactorily established.

The law is settled in this Commonwealth, in accordance with the doctrine declared by Lord Stowell and Sir John Nicholl in the English ecclesiastical courts, that any condonation by the wife of her husband's cruelty is on the implied, if not expressed, condition of his treating her in the future with conjugal kindness; that any breach of this condition will revive the right to maintain a libel for the original offence; and that such a breach

may be shown by acts, words or conduct which would not of themselves prove a cause of divorce. Harshness or rudeness, not sufficient to maintain a libel, may receive a different interpretation and effect upon the question of condonation, after proof that the husband has previously gone to the length of positive acts of cruelty. *Gardner* v. *Gardner,* 2 Gray, 441, 442. *D'Aguilar* v. *D'Aguilar,* 1 Hagg. Eccl. 782. *Durant* v. *Durant,* Ib. 763. *Westmeath* v. *Westmeath,* 2 Hagg. Eccl. (Suppt.) 114.

In the case before us, the testimony was that for the period of six weeks, beginning only a fortnight after the last act of extreme cruelty proved, the husband, while living in the same house with his wife, wholly and continuously refused to speak to her. Such evidence of persistent and enduring unkindness and ill temper warranted the wife or the court in inferring that his smothered anger would break out again into acts of cruelty.

*Divorce granted to the wife.*