LEWIS A. HARTWELL *vs.* EDNA L. HARTWELL.

Middlesex.   May 9, 1945. — June 4, 1945.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Marriage and Divorce*, Condonation.

Condonation of adultery is upon the implied condition that the adulterous spouse will thereafter faithfully observe marital obligations.

The defence of condonation by a husband of adultery by his wife was not established as a matter of law by the mere fact that after he learned of the adultery he had continued to live with her in the marital relation, where there was evidence that subsequently, when admonished by him to "leave those other fellows alone," the wife broke the implied condition of the condonation by leaving him and two children.

LIBEL FOR DIVORCE, filed in the Probate Court for the county of Middlesex on August 17, 1944.

The case was heard by *Monahan,* J.

*V. C. Harnish,* for the libellant.

*B. S. Resh,* for the libellee, submitted a brief.

QUA, J.   This is a libel for divorce for adultery. The evidence is reported.

At the trial the libellant, having introduced evidence of adulteries by the libellee in the year 1943, testified that in July, 1944, the libellant and the libellee spent a few days at the house of the libellee's mother in Maine, where there was a boarder named Warren; that after their return the libellee "was always talking about" Warren; that on August 7, in the presence of the libellant's mother, the libellee admitted the 1943 adulteries and "told about this fellow Warren"; that the libellant then said to the libellee that he "was getting pretty sick of it, and to leave those other fellows alone, or to leave . . . [him] alone"; that the next morning the libellee "said she was going to visit her sister and stay there"; that after the libellee left, the libellant and the two children moved to the libellant's sister's place; and that he had to break up his home after he saw he could not keep it going.

On cross-examination the libellant testified that after he learned of the libellee's 1943 adulteries he continued to live with her in the relation of husband and wife, and while they were so living together a child was born to her which he believed was his; that they were still friendly up to the time this divorce libel was entered; and that when he continued to live with her after he learned of the adulteries he had the two children and wanted to keep them together.

At this point in the trial the judge asked counsel for the libellant whether he had any further evidence of adultery and upon receiving a negative answer, said, "I find that the alleged adultery has been condoned; the alleged adultery having taken place in 1943 and they have been living together as man and wife up to 1944. I am ruling that if this is all of your evidence that that was condonation." Counsel for the libellant said, "Please save my rights." The judge said, "Yes," and the trial came to an end. We must construe the action of the judge as he himself finally left it, that is, as a ruling of law that the libellant's own testimony established the defence of condonation.

This ruling was incorrect. Although condonation is commonly a question of fact (*Quigley* v. *Quigley*, 310 Mass. 415, 417–418, and cases cited), it would seem from the libellant's own testimony that by continuing to live in full marital relations with the libellee after knowledge of her alleged adultery he did condone her conduct. But such condonation was upon the implied condition that the libellee would thereafter faithfully observe her marital obligations. *Gardner* v. *Gardner*, 2 Gray, 434, 441–442. *Robbins* v. *Robbins*, 100 Mass. 150. *Jefferson* v. *Jefferson*, 168 Mass. 456, 460. *Osborn* v. *Osborn*, 174 Mass. 399. *LaFlamme* v. *LaFlamme*, 210 Mass. 156, 158. *Hedden* v. *Hedden*, 277 Mass. 112. *Callan* v. *Callan*, 280 Mass. 37, 43. The libellant's testimony tended to show that the libellee broke this condition by deserting the libellant and the children when the libellant became suspicious about Warren and when he insisted that the libellee should keep away from other men. It could have been found that the libellee's departure was not at the request or with the consent of the libellant (see

*Hammond* v. *Hammond*, 240 Mass. 182, 185), but that when told she could not have her husband and other men too she chose to leave her husband in violation of her marital duty.

The libellant was entitled to have all the evidence considered and could not properly be foreclosed of that right by such a ruling of law as that made by the judge.

The final decree dismissing the libel is reversed, and the cause is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*