## EDWARD FRANKLIN *vs.* ELLEN FRANKLIN.

Plymouth.    December 8, 1905. — February 27, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Marriage and Divorce.    Husband and Wife.*

A wife legally cannot refuse to accompany her husband in a reasonable change of domicil.

The wife of a skilful mechanic, both husband and wife being natives of England where they were married and where several children were born to them, who refuses to accompany her husband when he moves to America "to better his condition in life," and who on two occasions afterwards, when he has sent her

money sufficient to bring her and the children then with her in a comfortable manner to America, again refuses to come, can be found to be guilty of utter desertion which will justify the granting of a divorce to her husband on this ground under R. L. c. 152, § 1.

KNOWLTON, C. J.   The libellant and his wife are natives of England, where they were married in 1874, and where several children were born to them.   The libellant, being a skilful mechanic, came to America "to better his condition in life" in 1891, and he has remained here ever since.   His wife refused to accompany him, and he has not seen her since their separation. Some of their children have joined him here.   He testified that, on two occasions after his arrival in America, he sent her sums of money sufficient to defray the expense of bringing her and the children who were then with her to America, in a comfortable and respectable manner.   Once she kept the money but refused to come, and on the other occasion she refused to come, and returned a portion of the money.   There is an averment in the libel that the libellant has continuously resided in this Commonwealth for the last five years, and we infer from the report that there is no question on this part of the case.   On these facts the libellant asked for a decree of divorce *nisi* for desertion ; but the judge declined to order a decree, and ruled that the libellee, in thus refusing to follow her husband to this country, was not guilty of desertion, and reported the case to this court.   If the ruling was wrong and the evidence warrants it a decree *nisi* for desertion is to be entered.

If the libellee was guilty of desertion, there is no question as to the jurisdiction of the court.   Jurisdiction depends upon the situs of the libellant, and not upon the place of the marriage, or of the commission of the offence against the marital relation. Under our statute, "If the libellant has lived in the Commonwealth for five years last preceding the filing of the libel, . . . a divorce may be decreed for any cause allowed by law, whether it occurred in this Commonwealth or elsewhere, unless it appears that the libellant has removed into this Commonwealth for the purpose of obtaining a divorce."   R. L. c. 152, § 5.   If, therefore, the evidence warrants a finding of utter desertion by the libellee, whether it occurred in England or in America, and if it continued for three consecutive years next prior to the filing of the libel, a divorce should be granted.   R. L. c. 152, § 1.

The fundamental fact to be considered is that the husband, as head of the family legally responsible for its support, has a right to choose and establish a domicil for himself and his wife and children.   A refusal of the wife to stay with him in that domicil, without a sufficient reason for her refusal, is desertion.   This right of the husband is not limited to the State or country in which the parties live at the time of their marriage, but in these days of easy communication between different countries and different parts of the same country, he may exercise it reasonably, in a way which will change his citizenship and allegiance. So far as he personally is concerned, if his duties to his wife are left out of consideration, this right is doubtless absolute.   But in reference to the rights, duties and liabilities of the parties in their marital relations it is not absolute.   It should be exercised with some reference to the welfare of the wife.   We can conceive of a choice of a domicil so plainly unreasonable and improper, in reference to the health and welfare of the wife, that the selection of it, and an attempted enforcement of his general marital right to have her share it with him, would be extreme cruelty, such as would justify her in declining to accompany him or follow him to such a place of abode.   His wife's marital right and his duty as a husband would come in conflict with the exercise of his general right to choose his own domicil, if he attempted to exercise the right in such a way as would be utterly and grossly unreasonable because of the peril to her life and health, and perhaps because of her deprivation of other things essential to her welfare.   But the determination of such matters must, in the first instance and ordinarily, be left to the husband, upon whom rests the legal duty to provide for his family, as well as for himself.   The wife cannot legally refuse to accompany him in a change of domicil unless such a change is plainly unreasonable.   See *Keech* v. *Keech*, L. R. 1 P. & D. 641.   *Hair* v. *Hair*, 10 Rich. Eq. 163.   *Hardenbergh* v. *Hardenbergh*, 14 Cal. 654.

There is nothing in the present case to show a legal excuse for the wife's refusal.   There was nothing very difficult in the distance, or in the time required for the journey, or in the discomfort attending it.   The removal from the old home to the new one would have involved no change of race or language in

the wife's companions. It included departure from her native land and separation from the friends of her youth. But these are no more than common experiences nowadays. In these years of emigration, to hold that a wife ought not to be required to accompany her husband from England to America, if his interests and those of his family would be greatly promoted by such a change, would impede social progress and individual advancement. We are of opinion that the ruling, as matter of law, that the libellee was not guilty of desertion, was erroneous.

In our opinion the evidence would warrant a finding that, without other excuse than her disinclination to leave her native land, she wilfully refused to accompany her husband to America when his interests and those of his family required such a change of domicil, and that she persisted in this refusal. This would justify a finding of utter desertion on her part.

The alleged desertion referred to in *Bishop* v. *Bishop*, 30 Penn. St. 412, occurred nearly fifty years ago, when conditions were very different from those at present, and the decision was made to depend upon a question of jurisdiction under the statutes of Pennsylvania.

*Decree for the libellant.*

*P. A. Bridgham*, for the libellant.
No counsel appeared for the libellee.